UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| DENNIS M. MURRAY, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:10-cv-297 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| _____) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a partially favorable decision of the Commissioner of Social Security finding that plaintiff was disabled and entitled to disability insurance benefits (DIB) on and after February 5, 2008. This date was one day before plaintiff's 50th birthday and the occasion under social security regulations when his age classification changed from a younger individual to an individual "closely approaching advanced age." 20 C.F.R. § 404.1563(c), (d). The Commissioner found that plaintiff was not disabled during the closed period from July 20, 2005, through February 4, 2008.

Plaintiff filed his application for DIB benefits on June 28, 2006, alleging a July 20, 2005 onset of disability. (A.R. 119-21). His claim was denied on initial review. (A.R. 76-80). On March 3, 2009, plaintiff received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 32-64). On April 20, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 69-75). The Appeals Council granted plaintiff's request for review. On January 25, 2010, the Appeals Council held that plaintiff was disabled on and after February 5,

2008, but was not disabled before that date. (A.R. 9-11). On March 29, 2010, plaintiff filed his complaint seeking judicial review of the portion of the Commissioner's decision finding that he was not disabled before February 5, 2008. Plaintiff asks the court to overturn the Commissioner's decision based on the following argument:

> THE ALJ FAILED TO EITHER GIVE CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS OR TO ADEQUATELY AND ACCURATELY EXPLAIN HIS REFUSAL TO DO SO, AND FURTHER FAILED TO APPROPRIATELY DETERMINE THE WEIGHT TO BE ACCORDED SAID OPINIONS EVEN IF NOT CONTROLLING.

(Plf. Brief at 7, docket # 12). Upon review, I find that plaintiff's argument does not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any

fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The Appeals Council found that plaintiff met the disability insured requirement of the Social Security Act from July 20, 2005, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity on or after July 20, 2005. (A.R. 10). Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral knees, [and] muscle atrophy." (A.R. 10). Plaintiff did not have an

impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 10). The Appeals Council found that plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> The claimant has the residual functional capacity to perform the physical exertion of sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant can lift/carry 10 pounds occasionally and frequently; sit about six hours in an eight-hour day; never climb ladders, ropes or scaffolds; frequently balance, push/pull, reach overhead, grip, grasp, and hand movement and use hand controls; avoid concentrated exposure to extreme heat and cold, wetness, vibration, and pulmonary irritants; reads at a second grade level.

(A.R. 10). The Appeals Council found that plaintiff's testimony regarding his subjective limitations "was credible to the extent that he [was] precluded from performing more than sedentary work." (A.R. 10). Plaintiff was unable to perform his past relevant work. (A.R. 11). Plaintiff has a high school education and no transferrable work skills. (A.R. 11). The Appeals Council adopted the ALJ's finding that plaintiff was not disabled while he was classified as a younger individual. (A.R. 10, 11). On February 5, 2008, one day before plaintiff's 50th birthday, his age classification changed to an individual closely approaching advanced age. (A.R. 11). The Appeals Council found that "based on a change in the claimant's age category," Rule 201.14 directed a finding that plaintiff was disabled on and after February 5, 2008. (A.R. 11).

Plaintiff argues that the Commissioner committed reversible error when he failed to give adequate weight to the opinions Steven Harwood, M.D., expressed in his October 23, 2008 "Lumbar Spine Residual Functional Capacity Questionnaire" responses. (Plf. Brief at 7-10, docket # 12; Reply Brief at 1-3, docket # 14).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner, and a treating physician's opinion that a patient is

disabled is not "giv[en] any special significance." 20 C.F.R. § 404.1527(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirement of a listed impairment, because they are administrative issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

It is the Commissioner's job to resolve conflicting medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Mitchell v. Commissioner*, 330 F. App'x 563, 567-68 (6th Cir. 2009). Judicial review of the Commissioner's final administrative decision does not encompass resolving such conflicts. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *see Price v. Commissioner*, 342 F. App'x 172, 175-76 (6th Cir. 2009). The treatment relationship is one of the factors that the ALJ considers in determining what weight to give a medical opinion. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(d)(2). If the Appeals Council finds that the treating source's opinions on the issues of the nature and severity of the claimant's impairments are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in the case record," the opinions are given controlling weight. *Id.*; *see Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009); *White v. Commissioner*, 572 F.3d 272, 285-86 (6th Cir. 2009). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion

of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The Appeals Council "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of his symptoms is not entitled to any particular weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 330 F. App'x at 569-70; *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative

bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Cole v. Astrue*, No. 09-4309, __ F.3d __ 2011 WL 2745792, at * 4 (6th Cir. July 15, 2011).

The Appeals Council found that plaintiff was not disabled during the closed period from July 20, 2005, through February 4, 2008. It is doubtful that Dr. Harwood can be considered a "treating" physician during this period, as he rendered no treatment. Plaintiff estimated that Dr. Harwood examined him "four times," but never prescribed medication. (A.R. 41-42). According to plaintiff, Harwood made assessments of his physical abilities and made arrangements for treatment by others:

> Q     All right. And when you've gone in what's Dr. Harwood done for you, what kind of treatment?
>
> A     Well, basically he checked out my physical abilities, and then he lined me up one time for the Michigan Pain Center or something, Michigan Pain Specialists.
>
> Q     Okay. Anything else? Has he given you medications?
>
> A     And then a medical basis, what did you say?
>
> Q     Yeah. I asked you if he gave you medications. Prescribe medications?
>
> A     Oh, no, because I already had Motrin. I already have a prescription for 800 milligram Motrin through another doctor.
>
> Q     Okay. All right. So he gave you exams and referred you to the pain specialist, is that accurate?
>
> A     Yes, sir.
>
> Q     Any other treatment --
>
> A     And then --
>
> Q     -- from Dr. Harwood?

> A And then after that they put me through therapy for my back.
>
> Q All right.
>
> A I went through therapy right there --
>
> Q Through Dr. Harwood?
>
> A Gary Gray.
>
> Q Through Dr. Harwood.
>
> A Dr. Harwood also, yes.

(A.R. 41-42).

 Plaintiff's initial visit with Dr. Harwood occurred on August 2, 2006, more than a year after his alleged onset of disability, on a referral from his attorney in connection with plaintiff's worker's compensation claim for a "consultation and recommendations regarding [plaintiff's] back and left leg problems." (A.R. 260). Dr. Harwood noted that Michael Chrissos, M.D., was plaintiff's treating knee surgeon. (A.R. 260). Plaintiff stated that he had injured himself at work on July 19, 2005. He had not treated with any physician for back pain. (A.R. 260-61). Dr. Harwood's August 2, 2006 letter to plaintiff's attorney concluded with this statement: "At this point, I do not feel that he will ever be able to return to the type of work he was doing. I do not see him getting back to his pre-injury status when he has evidence of nerve damage that will not recover." (A.R. 262). Harwood's October 24, 2006 letter states that plaintiff was taking Motrin for pain relief. (A.R. 258). His November 28, 2006 letter indicates that no follow-up examination was scheduled because Dr. Harwood and plaintiff had reviewed the available treatment options. (A.R. 257). On March 6, 2007, Dr. Harwood wrote to plaintiff's attorney, "I had the opportunity of seeing Dennis Murray in the office today in a followup at your request." (A.R. 256). Harwood wrote that plaintiff continued to

have chronic back pain. He indicated that plaintiff should "avoid lifting greater than 10 to 15 pounds regularly." Plaintiff needed to avoid prolonged driving and should be able to walk around if needed Plaintiff required work restrictions against repetitive bending or twisting, and could not squat or climb. Further, Dr. Harwood supplied a conclusion that plaintiff "would only be able to start out on a part time situation even [if] that were available. My sense is that with the knee problem and the back problem that it is going to be very hard to find him any type of regular work with all of his restrictions and persistent problems." (A.R. 256).

The only office notes from Dr. Harwood that plaintiff presented in support of his claim for DIB benefits are dated May 9, 2008 (A.R. 279-80) and October 2, 2008 (A.R. 277-78). On both occasions, plaintiff related that he was experiencing moderate low back pain. The only medication he was taking was Motrin. (A.R. 277, 279). Dr. Harwood stated that in addition to taking Motrin for pain on a PRN basis, plaintiff should avoid climbing, pace activities, place a pillow under his knees for comfort, and should "lie down as needed." (A.R. 278, 280).

On October 23, 2008, Dr. Harwood completed his Lumbar Spine Residual Functional Capacity Questionnaire responses in support of plaintiff's claim for DIB benefits. (A.R. 282-85). He concluded that plaintiff required a "sit/stand/lie down option." (A.R. 283). He expressed doubts whether plaintiff could work at all and that he would restrict plaintiff to "less than 2 hours" sitting or standing/walking. (A.R. 284). He stated that plaintiff would "frequently" need to take unscheduled breaks during an 8-hour workday. Plaintiff could frequently lift and carry less than ten pounds and occasionally lift and carry ten pounds. (A.R. 284). He could rarely twist and stoop and never squat or climb ladders or stairs. Dr. Harwood offered a prediction that plaintiff would be

absent from work more than four days per month as a result of his impairments or treatment. (A.R. 285).

The record supports a finding that the relationship between plaintiff and Dr. Harwood was limited to examinations for the purpose of providing opinions for counsel. Nevertheless, the Commissioner indulgently considered Dr. Harwood's opinions as the opinions of a treating physician[1] (A.R. 73), but found that the opinions Dr. Harwood offered on plaintiff's disability, RFC, credibility, and other issues reserved to the Commissioner were not well supported by objective evidence, were contrary to other record evidence, and were entitled to little weight:

> In terms of the claimant's alleged impairments, the diagnostic evidence supports a conclusion that the clamant can perform work at the level specified herein. An MRI conducted on March 17, 2006 indicated that the claimant had no evidence of focal disc herniation within the lumbosacral spine although there were some disc bulges at L3/4, L4/5 and L5/S1 (Exhibit 1F)[A.R. 179]. An EMG conducted on May 15, 2009 was consistent with left L5 radiculopathy with both acute and chronic characteristics; no evidence of peripheral neuropathy or evidence of right sided lumbosacral radiculopathy. (Exhibit 3F/5)[A.R.208]. An MRI conducted on May 15, 2006 indicated that the claimant had low back pain with degenerative facet atrophy as the potential etiology versus discogenic etiology with the residual of the left lumbosacral radiculopathy (Exhibit 4F)[A.R. 210-12].
>
> Findings made by the claimant's treating physician further support the conclusion contained herein. On July 13, 2006, the claimant had some weakness of his gluteus maximus, as well as, his gastrosl[o]eus complex with only trace weakness of his left quad and gluteus medius; inconsistent activation of his left psoas; atrophy noted in several muscles of the lower extremity; gait was wide based with compensated [T]rendelenburg gait on the left; able to toe walk, although demonstrated some difficulty; tenderness with palpation around the left knee joint; decreased range of motion in the lumbar spine; straight leg raises were negative (Exhibit 4F)[A.R. 210-12]. Following the claimant's surgery to his left knee in November 2006, the doctor noted the claimant's trauma involving ACL and PCL as well as the meniscus were corrected and diminished flexion of the knee, and post operative changes in L4/S1 (Exhibit 8F)[A.R. 243-45].

---

[1] "The Appeals Council adopt[ed] the Administrative Law Judge's statements as to the pertinent provisions of the Social Security Act, the Social Security Administration Regulations, the issues in the case, and the evidentiary facts. (A.R. 9).

> As for the opinion evidence, the undersigned has considered an RFC completed by the claimant's treating physician that the claimant can sit, stand, walk, less than two hours; frequently lift less than 10 pounds, and would miss more than 4 days or more of work a [month]. (Exhibit 16F)[A.R. 282-85].
>
> In sum, the above residual functional capacity assessment is supported by substantial evidence of record. The undersigned considered the claimant's alternative RFC (Exhibit 16F)[A.R. 282-85] and does not find this evidence to be persuasive. The claimant testified that he had only seen this doctor four times since 2006 for examination and referral to the Michigan Pain Specialists. The claimant's treating physician did not provide a narrative, nor [were] there records to support his findings. The findings made on examination are consistent with the limitations in the RFC which is consistent with the State agency and consultative examiner. The claimant has also not had surgery on his back and diagnostic testing showed no evidence of focal disc herniation.

(A.R. 72-73). I find no violation of the treating physician rule. The Commissioner's determination that the extreme restrictions endorsed by Dr. Harwood were not entitled to any particular weight is well supported. Further, the Commissioner complied with the procedural requirement of providing "good reasons" for the limited weight he gave to Dr. Harwood's opinions.

The ALJ gave weight to the objective evidence, the medical findings and opinions of plaintiff's treating surgeon, Dr. Chrissos, and findings made on examinations by Karl R. Freydl, D.O., of Michigan Pain Specialists (A.R. 210-12), and Richard C. Gause, M.D., of Michigan Medical Consultants (A.R. 243-45). Dr. Chrissos performed a left knee partial lateral menisectomy and chrondoplasty of plaintiff's patella on January 25, 2006. (A.R. 192, 219-20). A March 17, 2006 MRI of plaintiff's lumbosacral spine showed "no evidence of focal disc herniation within the lumbosacral spine although there [were] some disc bulges at L3-4, L4-5 and L5-S1." (A.R. 179). A May 19, 2006 electromyographic examination revealed no evidence of generalized peripheral polyneuropathy and no evidence of right-sided lumbosacral radiculopathy. There was evidence consistent with left L5 radiculopathy. (A.R. 208). On July 17, 2006, Dr. Chrissos noted that

plaintiff's condition had improved. He suggested permanent restrictions of "no kneeling, squatting, climbing, or lifting more than 20 pounds." Further, he stated that plaintiff would be "unable to work at height." Dr. Chrissos recommended "job relocation." (A.R. 214).

On July 13, 2006, Dr. Freydl conducted a consultative examination. He stated that plaintiff's MRI results were "fairly unimpressive for identifying a discrete lesion which would cause the symptoms he describes." (A.R. 211). Plaintiff had no focal strength deficits on his right side. The Commissioner's opinion accurately summarized the evidence indicating some left-sided muscle weakness. (A.R. 211). Plaintiff had "no interest" in undertaking the epidural steroid injection therapy suggested by Dr. Freydl.

Dr. Gause conducted a consultative examination on November 10, 2006. (A.R. 243-45). He found that plaintiff's muscle strength and tone were normal. Plaintiff walked with a normal gait. He had no clubbing, cyanosis, or edema. (A.R. 244). He had diminished flexion in his surgically repaired left knee and a slightly reduced range of motion in his dorsolumbar spine. (A.R. 244-45).

Plaintiff's argument that "the ALJ did not recognize Dr. Harwood as a treating source" (Reply Brief at 1) is frivolous. The Commissioner considered Dr. Harwood's opinions as those of a treating opinion. (A.R.73). However, if the Commissioner had declined to treat Dr. Harwood's opinions as those of a treating physician, it would not have been error, in light of plaintiff's testimony that Dr. Harwood merely made assessments of his physical abilities and made arrangements for treatment by others. (A.R. 41-42). *See Kornecky v. Commissioner*, 167 F. App'x 496, 506 (6th Cir. 2006); *see also Karger v. Commissioner*, 414 F. App'x 739 774 (6th Cir. 2011); 20 C.F.R. § 404.1527(d)(2). Equally meritless is plaintiff's related argument that the Commissioner

committed reversible error when he "suggested" that plaintiff had visited Dr. Harwood four times during the period from 2006 through 2008, when Harwood's records indicated the actual total was six visits: August 2, October 24, November 28, 2006, March 6, 2007, and May 9 and October 2, 2008. (Plf. Brief at 8; Reply Brief at 1-3). The four-visit figure is based on plaintiff's testimony. (A.R. 41). Two additional visits over the time span at issue are utterly inconsequential, particularly given Harwood's lack of medical care for purposes of treatment.

Plaintiff emphasizes Harwood's responses in the Lumbar Spine Residual Functional Capacity Questionnaire indicated that he required a "lie down" option at work, had "pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks," and estimated that plaintiff would miss work more than four times a month. (Plf. Brief at 9-10). A treating physician's estimate of how often a patient who is not working would likely be absent from work if he had a job is not a medical opinion, and it is not entitled to any particular weight. *See, e.g., Valdes v. Commissioner*, No. 1:08-cv-872, 2010 WL 911181, at *8 (W.D. Mich. Mar. 12, 2010). "[N]o special significance" is attached to a treating physician's opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or disability because they are administrative issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Allen v. Commissioner*, 561 F.3d at 652. The Commissioner is responsible for making the factual finding regarding plaintiff's credibility, not the treating physician. *Id.*; *see Blair v. Commissioner*, No. 10-5104, 2011 WL 2728215, at * 4 (6th Cir. July 14, 2011); *Ferguson v. Commissioner*, 628 F.3d 269, 274 (6th Cir. 2010). There is more than substantial evidence supporting the Appeals Council's finding that plaintiff's testimony was credible only to the extent that he was unable to perform more than sedentary work. (A.R. 10). I find that the Commissioner correctly applied the law and that his

decision finding that plaintiff was not disabled before February 5, 2008, is supported by more than substantial evidence.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:   August 25, 2011            /s/  Joseph G. Scoville
                                                        United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).